WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Armentha Hooker,<br><br>        Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>        Defendant. | No. CV-13-02616-PHX-JAT<br><br>**ORDER** |

Plaintiff Armentha Hooker, mother of minor claimant Z.H., appeals a denial of benefits by the Acting Commissioner of Social Security ("Commissioner"). The Court now rules on this appeal.

**I.    BACKGROUND**

   **A.    Procedural History**

Plaintiff filed an application for disability insurance benefits on May 28, 2009 on behalf of her minor daughter, Z.H., alleging Z.H.'s disability beginning May 26, 2009. The claim was denied on September 15, 2009, and again upon reconsideration on January 13, 2010. Plaintiff requested a hearing, which was conducted by an Administrative Law Judge ("ALJ") on April 17, 2012 in Phoenix, Arizona.

   **B.    Factual Background**

Z.H. began seeing mental health professionals in 2007 at the age of five due to behavioral problems at home and school. Specifically, Plaintiff reported to a psychologist, Herb Brenden, Ed.D, L.P., that Z.H. had trouble focusing and following

directions and became violent with peers and teachers. Dr. Brenden referred Z.H. to a psychiatrist, Dexter D. Whittemore, M.D., and Z.H. was diagnosed with attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD"). Dr. Whittemore prescribed Daytrana 15 mg and noted improvements in focus, organization, and impulsivity. At one point during Z.H.'s treatment with Dr. Whittemore, Z.H.'s father reported that she was doing "generally well" with the treatment plan, but Z.H.'s teachers, continued to report behavioral problems.

In 2009, when she was seven years old, Z.H. qualified for special education services in her school district in Minnesota, which included intermittent attendance in special education classes and a behavioral intervention plan. Between 2009 and 2010, Z.H.'s parents and teachers reported periods of improvement and periods of increased violent, disruptive, and impulsive behavior. Dr. Whittemore eventually added Ritalin to Z.H.'s treatment plan.

Plaintiff and Z.H. moved to Arizona in 2010 and saw a psychiatrist, Edwin A. Perez, M.D., in October 2010, seven months after Z.H.'s last appointment with Dr. Whittemore. Z.H.'s new school district in Arizona placed Z.H. on an "individual education plan," under which Z.H.'s teacher reported steady improvements.

Dr. Perez completed an assessment of Z.H.'s limitations on June 30, 2011, in which he concluded that Z.H. had marked limitations in motor functioning, social functioning, and concentration, persistence, or pace. Z.H.'s fourth grade teacher in Arizona, Ms. Linda Foster, filled out a similar assessment, concluding that Z.H. had marked limitations in cognitive/communicative functioning and concentration, persistence, or pace as well as an extreme limitation in social functioning. At the hearing, a non-examining medical expert, Raymond E. Moore, Ph.D, testified that Z.H. did not have any marked or extreme limitations. Plaintiff also testified at the hearing, stating that Z.H. inflicts physical harm on others and herself, takes abnormally long to do her homework, has trouble focusing, and is generally defiant toward adults.

## II. DISABILITY

### A. Three-Step Evaluation Process

The ALJ follows a three-step process to evaluate whether a child is disabled. First, the ALJ determines whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a), (b). If the child is engaged in substantial gainful activity, then she is not disabled. 20 C.F.R. § 416.924(b). Second, the ALJ determines whether the child has a "medically determinable impairment(s) that is severe." 20 C.F.R. § 416.924(c). For purposes of this step, "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations" does not constitute a severe impairment. 20 C.F.R. § 416.924(c). If the child has no severe, medically determinable impairment, the she is not disabled. 20 C.F.R. § 416.924(c). Finally, the ALJ must determine whether the child's impairment "meet[s], medically equal[s], or functionally equal[s] the listings." 20 C.F.R. § 416.924(d). The impairment medically equals a listed impairment if "it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a); *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The impairment is functionally equivalent to a listed impairment if the child has a "marked" limitation in two areas or an "extreme" limitation in one area. 20 C.F.R. § 416.926a (a); *Howard*, 341 F.3d at 1012.

In making disability determinations, the ALJ must "develop the record and interpret the medical evidence." *Howard*, 341 F.3d at 1012 (citing *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996)). In doing do, however, "the ALJ does not need to 'discuss every piece of evidence.'" *Id.* (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) and *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir.1984)).

### B. The ALJ's Decision

At step one, the ALJ determined that Z.H. is not engaged in gainful employment. At step two, the ALJ determined that Z.H. has two medically determinable, severe impairments: ADHD and ODD. At step three, the ALJ found that Z.H. does not have an impairment or combination of impairments that meets, medically equals, or functionally

equals the listings. Accordingly, the ALJ concluded that Z.H. is not disabled and therefore Plaintiff is not entitled to benefits.

### C. Standard of Review

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation marks omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation omitted).

## III. Discussion

Plaintiff's main objections to the ALJ's decision center on the way the ALJ assigned weight to the various sources of evidence. Specifically, Plaintiff argues that the ALJ erred by assigning "little weight" to Dr. Perez's assessment, ignoring Ms. Foster's assessment, and relying on Dr. Moore's opinion. As these sources differ in nature, the Court will address them each separately.

### A. Dr. Perez

Plaintiff's first and largest argument is that the ALJ erroneously assigned "little weight" to Dr. Perez's assessment of Z.H. The ALJ explained that she diminished the

1 weight given to Dr. Perez's assessment because Dr. Perez was "not seeing [Z.H.]
2 consistently or regularly" when he completed the assessment and because the assessment
3 was inconsistent with Z.H.'s medical[1] and school records.

4 ALJs are entitled to give less weight to physicians that do not regularly treat a
5 claimant or who are not procured for the purpose of treatment. The regulations provide
6 in-depth guidance in this regard:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 416.902.

The Ninth Circuit has elaborated upon this guidance, holding that "[t]he key issue in determining whether [a physician] was claimant's treating physician is whether his examinations of her were prompted by her need for treatment." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003) (quoting *Bowman v. Commr, Soc. Sec. Admin.*, 2001 WL 215790 (Feb. 23, 2001)). Additionally, the Ninth Circuit has explained that "[i]t is not necessary, or even practical, to draw a bright line distinguishing a treating physician from a non-treating physician. Rather, the relationship is better viewed as a series of points on a continuum reflecting the duration of the treatment relationship and the frequency and nature of the contact." *Id.* (quoting *Ratto v. Sec'y, Dep't of Health &*

---

[1] The Court acknowledges that the notes cited by the ALJ as "Dr. Perez's own treatment notes" were actually written by Dr. Whittemore and other mental health professionals. This error, however, is insubstantial, as the contents of the notes, not the author's identity, is at issue.

- 5 -

1 *Human Servs.*, 839 F. Supp. 1415, 1425 (D. Or. 1993)).

2 Applying these standards, the Court concludes that the ALJ did not commit reversible error by assigning "little weight" to Dr. Perez's assessment. After a careful review of the record, the Court could locate documentary evidence of only three visits Z.H. had with Dr. Perez: one on October 25, 2010 (Tr. 871–77), another on October 12, 2011 (Tr. 831–33), and another on January 11, 2012 (Tr. 985–86). Only one of these visits occurred before Dr. Perez completed his assessment in June of 2011. There are no treatment notes on the record for the June 15, 2011 visit Dr. Perez claims he had with Z.H. Even if Dr. Perez did, in fact, see Z.H. in June 2011, that would only be his second recorded visit with Z.H. before completing the assessment and the first recorded visit in eight months. The other records cited by Plaintiff consist of notes taken by other health care professionals, informed consent forms, and Dr. Perez's assessment itself. The only other evidence that indicates Dr. Perez may have seen Z.H. more than twice before making his assessment is Plaintiff's testimony that Z.H. visits Dr. Perez "from once a month to once every three months." The fact remains, however, that there is no documentary evidence of any such regular visits. Additionally, Plaintiff was testifying in April of 2012 about Z.H.'s *current* schedule with Dr. Perez, so the testimony does not necessitate the conclusion that Z.H. had a regular schedule with Dr. Perez *before* Dr. Perez completed his assessment. In short, there is little record evidence that Dr. Perez had an "ongoing treatment relationship" with Z.H. when he completed the assessment; to the contrary, the record strongly indicates that Dr. Perez saw Z.H. a few times, at most, before completing the assessment.

The ALJ's assignment of "little weight" to the Dr. Perez's assessment is further buttressed by her reasonable findings that Dr. Perez's assessment was inconsistent with the medical record and Z.H.'s school records. In particular, the ALJ cited progress reports within Z.H.'s school records that note Z.H.'s improvement in behavior, (Tr. at 776, 780), and a "45-day screening report" that shows only a few areas of behavioral and functional inadequacies, (Tr. 778). The ALJ also cites treatment notes that indicate Z.H. was a

1  mainstream student (as opposed to a special education student), (Tr. 663) and was "doing
2  generally well" with her focus and impulsivity, (Tr. 664). These school and medical
3  records showing Z.H.'s functionality, combined with the evidence showing the limited
4  nature of Dr. Perez's treating relationship with Z.H., constitute substantial evidence
5  supporting the ALJ's decision to assign Dr. Perez's assessment diminished weight.
6  Therefore, the ALJ did not err by assigning "little weight" to Dr. Perez's assessment.

### B.    Ms. Foster

Plaintiff argues that the ALJ erred by ignoring an assessment completed by Ms. Foster, which corroborates Dr. Perez's conclusions that Z.H. had disabling limitations. The Commissioner argues that any error in ignoring Ms. Foster's assessment was harmless because Ms. Foster did not base her opinion on scientific or medical testing. Finally, the Commissioner argues that because the ALJ properly rejected Dr. Perez's conclusion that Z.H. has marked limitations, the ALJ need not address every piece of lay testimony which reaches the same conclusions.

Both parties cite *Molina v. Astrue*, 674 F.3d 1122 (9th Cir. 2012) in support of their positions. In that case, the Ninth Circuit affirmed their well-established precedent that "lay witness testimony cannot be disregarded without comment," but held that the ALJ's failure to comment on lay testimony was harmless "[b]ecause the ALJ had validly rejected all the limitations described by the lay witnesses." *Molina*, 674 F.3d at 1114, 1122 (9th Cir. 2012) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal quotations marks omitted)). Specifically, the court held that because the ALJ had validly found that the claimant's purported limitations were not supported by the record, "the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination." *Id.* at 1122.

*Molina*'s holding is directly applicable here. First, the Court notes that it was unable to locate any mention of Ms. Foster's assessment in the ALJ's decision; the portions of the ALJ's decisions the Commissioner claims cited Ms. Foster's assessment actually cite a treatment note by Dr. Whittemore. Thus, the ALJ erred by disregarding lay

testimony without comment. *Molina*, 674 F.3d at 1114. As noted above, however, the ALJ in this case properly rejected the limitations described by Dr. Perez because they were not supported by the record. Therefore, because Mr. Foster reached essentially the same conclusions Dr. Perez reached regarding Z.H.'s limitations, the ALJ's error was harmless.

### C.    Dr. Moore

Plaintiff argues that Dr. Moore's opinion does not constitute substantial evidence to support the ALJ's finding of nondisability. Plaintiff notes that Dr. Moore did not take into account the records of Z.H.'s treatment before the alleged onset date or the records of her treatment after December 2011, all of which Plaintiff argues indicate major limitations. Plaintiff further argues that Dr. Moore erroneously concluded that Z.H.'s limitations were a result of non-compliance with medication. Finally, Plaintiff argues that Dr. Moore placed too much emphasis on the school records indicating improvement in Z.H.'s behavior, since those records did not identify how improvement was measured and because those records "pertained to a discrete period of time" and thus "were not an accurate representations of Z.H.'s functioning over time."

ALJs give weight to a nonexamining source based on factors laid out by the regulations. The following factors are applicable here:

> Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.
>
> Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

20 C.F.R. § 416.927(c)(3)–(4); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings

- 8 -

or other evidence in the record. ").

The Court is troubled that Dr. Moore formed his opinion without reviewing the records that predate the alleged onset date or postdate December 2011. Nevertheless, even without reviewing those records, Dr .Moore reviewed nearly two years' worth of treatment notes and school records, so it cannot be said that his opinion is without basis. The Court also recognizes that, as Plaintiff points out, the record contains evidence of behavior that is consistent with the limitations claimed by Plaintiff and Dr. Perez. But the record also contains evidence of behavior that indicates Z.H. has no marked or severe limitations. For example, as Dr. Moore explained in his testimony, Z.H. is a mainstream student, receives normal grades, and has shown consistent improvement in her behavior at school. The medical records also indicate multiple times when Plaintiff reported Z.H.'s medications as being helpful. This evidence shows that Dr. Moore's opinion is consistent with substantial record evidence, even if other record evidence contradicts his opinion. It is the ALJ's duty to resolve these types of conflict in the evidence. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("Generally, questions of credibility and resolution of conflicts in the testimony are functions solely for the agency.") (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (internal quotations marks omitted)). Accordingly, although this is a close case, the Court must defer to the ALJ's decision to give significant weight to Dr. Moore's opinion.

### D. Plaintiff's Testimony

The ALJ cited three primary reasons for discrediting Plaintiff's testimony[2]: gaps in treatment, noncompliance with treatment, and inconsistency with the educational record which shows that Z.H. was a mainstream student. (Tr. 21–22). Plaintiff argues that the record contains evidence that Z.H. received "extensive psychiatric care from about age 5." Plaintiff also points out record evidence that Z.H. was, in fact, medication-

---

[2] Plaintiff's brief seems to suggest that Z.H. herself testified or otherwise made claims of disability, (Doc. 13 at 23–25, 23 n.5) but she was not present at the hearing, (Tr. 16, 38, 96), and no other statements by Z.H. could be located by the Court. The Court therefore considers the arguments made by Plaintiff to pertain to the testimony of Plaintiff, Z.H.'s mother and the official claimant at the agency proceedings.

- 9 -

compliant. Additionally, Plaintiff argues that the ALJ should not have put much weight on the fact that Z.H. was a mainstream student because there is great variability among school districts on these matters and because Z.H. received some special education services.

The Social Security Administration has promulgated a ruling outlining how an ALJ should determine a claimant's credibility. S.S.R. 96–7p (Cum. Ed.1996), available at 61 Fed.Reg. 34,483–01 (July 2, 1996) ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). The Ninth Circuit has upheld this ruling:

> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. *See* S.S.R. 02–1p (Cum. Ed.2002), *available at* Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed.Reg. 57,859–02 (Sept. 12, 2002); S.S.R. 96–7p (Cum. Ed.1996), *available at* 61 Fed.Reg. 34,483–01 (July 2, 1996). An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair,* 885 F.2d at 603; *see also Thomas,* 278 F.3d at 958–59.

*Orn v. Astrue*, 495 F.3d 625, 635–36 (9th Cir. 2007).

The ALJ's decision here uses the precise criteria outlined by the Social Security Administration and the Ninth Circuit, and is supported by substantial evidence. The ALJ dedicates five paragraphs to describing instances in the record where Z.H. missed follow-up visits, (Tr. 663, 708), responded well to medication, (Tr. 669, 680, 871), went seven months without seeking treatment, (Tr. 708, 825, 845), and had had periods where she was not taking medications, (Tr. 691). (Tr. 21–22). As the Social Security Administration

and the Ninth Circuit have recognized, these instances properly impeach the credibility of Plaintiff's reports of Z.H.'s limitations. Indeed, Plaintiff does not argue that these instances did not occur, but that the ALJ should have instead emphasized Z.H.'s instances of compliance and history of getting psychiatric treatment for seven years. It is quintessentially the province of the ALJ to resolve conflicts of evidence and to make credibility determinations, and a reviewing court may only rarely overturn those findings. *See Parra*, 481 F.3d at 750. Because the ALJ cited substantial record evidence to support her findings regarding Plaintiff's credibility, the Court will uphold the ALJ's decision to disregard Z.H.'s testimony as not credible.[3]

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the decision of the Administrative Law Judge is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

Dated this 3rd day of February, 2015.

*James A. Teilborg*
Senior United States District Judge

---

[3] The Court notes that the ALJ did not discuss Z.H.'s status as a mainstream student in much detail. Specifically, while the ALJ noted that Z.H. is a "mainstream student who has continually been elevated from one grade to the next," she did not address that Z.H. had attended special educations classes intermittently and had behavioral problems. *See* 20 C.F.R. § 416.924a(b)(7)(iv). The Court need not reach this issue, however, because it holds that the other reasons the ALJ gave for discrediting Z.H.'s testimony were independently sufficient to withstand scrutiny.